UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**CASE NO.: 1:25-cv-25886-(LEIBOWITZ/LOIS)**

PARK STREET IMPORTS LLC, a Florida
limited liability company,

      Plaintiff,

v.

SAINT CLOUD, INC., a Delaware
corporation; and THE ACCELERATION
GROUP, LLC, a Delaware limited liability
company,

      Defendants.

_____/

## THE ACCELERATION GROUP, LLC'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

In its March 27, 2026 *Order* [ECF No. 28] on *Defendant, The Acceleration Group, LLC's, Motion for Final Default Judgment Against Defendant, Saint Cloud, Inc. and Incorporated Memorandum of Law* (the "Motion") [ECF No. 27], the Court noted the existence of separate state court actions relating to the entitlement to the Disputed Funds in Interpleader (the "Disputed Funds") and refrained from directing disbursement of the funds pending resolution of those cases. The Court, however, allowed for supplemental briefing to show why the Court may properly order disbursement of the Disputed Funds now. As shown below, it is appropriate to order disbursement of the Disputed Funds to Defendant The Acceleration Group, LLC ("TAG").

In its Interpleader Complaint, Plaintiff Park Street Imports, LLC ("Park Street") references two lawsuits by which Defendants TAG and Saint Cloud, Inc. ("Saint Cloud") purportedly seek to

1

determine entitlement to the Disputed Funds: a suit filed by TAG in Fulton County, Georgia (the "Fulton County Case")[1]; and a suit filed *pro se* by Ray Walker—who  is Saint Cloud's principal, and, importantly, who is not Saint Cloud—in California (the "California Case").[2] Saint Cloud is in default in the Fulton County Case, and Ray Walker has not served TAG in the California Case. In addition to the California Case, Walker and an unrepresented Saint Cloud filed another lawsuit against TAG in California (the "Other California Case")[3], this time alleging trademark infringement and other claims. Much like the California Case, the Other California Case has not been served on TAG, either. There is also a fourth pending suit, a trademark suit brought by TAG, also in California (the "Trademark Case"), in which Saint Cloud has answered and asserted a counterclaim. If that were not enough, in the midst of this litigation, Saint Cloud filed two bankruptcies, both of which were summarily dismissed, the latter with prejudice to prohibit refiling for six months. Saint Cloud is in default in the Fulton County Case, but the case shows no sign of movement, likely due to a crowded docket and burdened court system. As noted above, neither of Walker's cases, the California Case and the Other California Case, has ever been served on TAG, Saint Cloud is in default in the Fulton County Case, and the Trademark Case, which primarily concerns trademark infringement but hosts a counterclaim related to the Disputed Funds, is in its infancy. None of these cases prevents this Court from directing disbursement of the Disputed

---

[1] The Fulton County Case is *The Acceleration Group, LLC v. Saint Cloud, Inc. and Ray Walker*, Civil Action No. 25CV005234, (Superior Court of Fulton County, State of Georgia).

[2] The California Case is *Walker v. The Acceleration Group, LLC, Park Street Imports, LLC, and Does 1-50*, Case No. C25-03456, (Superior Court of California, Contra Costa County).

[3] The Other California Case is *Ray Walker and Saint Cloud, Inc. v. The Acceleration Group and Does 1-10*, Case No. C25-02228 (Superior Court of California, Contra Costa County).

2

Funds on the record provided by this Supplemental Brief, particularly in light of the conduct of Saint Cloud and Walker detailed below.

**Background**

**Creation of TAG's Security Interest**

In July 2023, TAG and Saint Cloud entered into a Factoring and Security Agreement (the "2023 Security Agreement") under which Saint Cloud agreed to sell to TAG certain accounts receivables arising from Saint Cloud's sale of bourbon product under the SAINT CLOUD Marks. *See Declaration of Ryan Tripp Offered in Support of The Acceleration Group, LLC's Supplemental Brief in Support of Motion for Default Judgment* (the "Tripp Declaration")[4], ¶ 2. TAG then made advances to Saint Cloud. As of April 2024, Saint Cloud owed TAG approximately $580,000 under the 2023 Security Agreement. *Id.* In May 2024, TAG and Saint Cloud restructured this outstanding debt with two promissory notes ("Note 1" and "Note 2"). Tripp Declaration, ¶ 3. In June 2024, Saint Cloud made a single payment on one of the notes and then made no further payments. *Id.* In August 2024, TAG declared Saint Cloud to be in default under the two notes. Tripp Declaration, ¶ 4. On August 27, 2024, TAG and Saint Cloud entered into a new Factoring and Security Agreement (the "2024 Security Agreement") under which Saint Cloud granted TAG as security for "all present and future obligations owed by Saint Cloud to [TAG]" "a continuing security interest in and to the Collateral" which included, *inter alia*, "all of each of [Saint Cloud's] now owned and hereafter acquired . . . General Intangibles and Proceeds of any of the foregoing." *Id.* A true and correct copy of the 2024 Security Agreement is attached as **Exhibit A**. On November 5, 2024, Saint Cloud issued a third promissory note to TAG for $20,000 ("Note 3"; together with Note 1 and Note 2, the "Notes"). Tripp Declaration, ¶ 5.

---

[4] The Tripp Declaration is filed contemporaneously with this Supplemental Brief.

SGR/81888194.2

Pursuant to the 2024 Security Agreement, Saint Cloud sold accounts receivables, including amounts owed by Park Street, (the "Accounts") to TAG and granted TAG a continuing security interest in those accounts together with other collateral identified in the 2024 Security Agreement (the "Collateral"). Exhibit A, §§ 9.a and 1.f; Tripp Declaration, ¶ 6. TAG's security interest in the Accounts was properly perfected by the filing of a financing statement on February 8, 2025 (the "Financing Statement"). Tripp Declaration, ¶ 7. A true and correct copy of the Financing Statement is attached as **Exhibit B**. Subsequently, TAG made advances and incurred expenses to establish, maintain, and/or enforce its interest created under the 2024 Security Agreement in the amount of $230,534.05. Tripp Declaration, ¶ 8.  A list of all advances and expenses under the 2024 Security Agreement is attached as **Exhibit C.**  *Id.* Saint Cloud failed to repay TAG any amounts for the advances and expenses made or incurred by TAG under the 2024 Security Agreement listed on Exhibit C. *Id.* As of March 27, 2026, Saint Cloud owed the following debts to TAG, all of which are secured by the 2024 Security Agreement: (i) Note 1: principal of $381,312.50, regular interest of $240,226.88, and default interest of $72,449.38; (ii) Note 2: principal of $229,274.73, regular interest of $48,759.09, and default interest of $44,097.17; (iii) Note 3: principal of $20,000, and interest of $3,206.67; (iv) advances under 2024 Security Agreement: $230,534.05; and (v) legal fees of $558,377.16. Tripp Declaration, ¶ 9.

**Enforcement of TAG's Security Interest and Commencement of Fulton County Case**

On February 13, 2025, TAG's attorneys sent a letter (the "Default Letter") by certified mail to Saint Cloud notifying it that TAG was declaring Saint Cloud in default, was accelerating all obligations under the Notes and the 2024 Security Agreement, and intended to exercise its rights and remedies under the 2024 Security Agreement, including its right to take possession of and sell Saint Cloud's inventory and such other collateral as it may choose. Tripp Declaration, ¶ 10. A true

SGR/81888194.2

and correct copy of the Default Letter is attached as **Exhibit D**.  On March 3, 2025, counsel for TAG sent notice (the "Notice") to, among others, Park Street notifying it that (i) TAG had purchased, and was the sole and absolute owner of, or had taken an assignment of, or a security interest in, all Accounts arising out of the sale of goods and/or the rendition of services by Saint Cloud; and (ii) in accordance with the terms of the agreement between Saint Cloud and TAG and Section 9-607 of the UCC, all payments made on the accounts receivable arising from sales made by Saint Cloud must be made to TAG pursuant to the instructions contained in the letter. Tripp Declaration, ¶ 11. A true and correct copy of the Notice is attached as **Exhibit E**.   On April 17, 2025, TAG filed the Fulton County Case asserting claims of breach of contract and fraud against Saint Cloud and Walker and tortious interference against Walker for his interference with TAG's collection efforts. Tripp Declaration, ¶ 12.  On or about May 6, 2025, TAG sent a Notice of Disposition of Collateral to Saint Cloud via email to Ray Walker and Saint Cloud's purported counsel, Thomas P. DeMuth, advising that a public sale of Collateral would take place on May 22, 2025. Tripp Declaration, ¶ 13.   TAG subsequently advertised the sale as required by the Uniform Commercial Code. *Id.*

**Saint Cloud's First Abusive Bankruptcy Filing**

On May 21, 2025, the day before the public sale was scheduled, Saint Cloud filed a bankruptcy case in the Northern District of California, styled *In re Saint Cloud Inc.*, Case No. 25-bk-400893 (Bankr. N.D. Cal.) (the "First Bankruptcy Case"), and in so doing, stayed the sale and the Fulton County Case.  The First Bankruptcy Case was improperly filed "pro se" by Saint Cloud, which is a corporation that may only appear through counsel, and was otherwise riddled with substantive and procedural deficiencies. Further compounding things, Saint Cloud failed to appear for its Meeting of Creditors scheduled for June 23, 2025, and that day the Court entered notice of

the deficiencies in the case [First Bankruptcy Case, ECF No. 5], giving Saint Cloud until July 7, 2025 to cure such deficiencies or face possible dismissal. When Saint Cloud did not cure such deficiencies, TAG moved to dismiss the First Bankruptcy Case on July 8, 2025. [First Bankruptcy Case, ECF No. 30], but before its motion could be heard, the bankruptcy court dismissed the case on July 9, 2025 for "deficient filing." [First Bankruptcy Case, ECF No. 32].  Walker, moving for Saint Cloud, subsequently, and unsuccessfully, sought to vacate the order of dismissal and reinstate the case. [First Bankruptcy Case, ECF Nos. 37, 38, and 39].  TAG amended its complaint in the Fulton County Case on July 23, 2005 to add a claim for declaratory relief regarding payment of the Accounts, rescheduled the sale for August 12, 2025, re-sent all notices, and re-ran the advertisements.

**The Other California Case**

On August 8, 2025, Walker and Saint Cloud, again without counsel, filed the Other California Case alleging claims for trademark infringement, unfair trade practice, and interference with prospective economic advantage against TAG. In the Other California Case, Walker and Saint Cloud sought a temporary restraining order halting TAG's foreclosure auction of Saint Cloud's trademarks, a preliminary and permanent injunction, declaratory judgment of sole ownership, damages, costs, attorney's fees, and the funds currently held by Park Street Imports and another account debtor to be released to Saint Cloud. A copy of the partially hand-written *Verified Complaint* filed in the Other California Case is attached as **Exhibit F.**[5]   To date, TAG has not been served in the Other California Case. Tripp Declaration, ¶ 14.  A Notice for Order to Show

---

[5] TAG has requested certified copies of state court pleadings and orders, where possible, and will provide those to this Court on receipt. Unless indicated otherwise, copies of state court pleadings and orders attached to this Supplemental Brief were obtained through the respective court's online portal.

SGR/81888194.2

Cause (the "Show Cause Notice") entered March 18, 2026, in the Other California Case sets a July 20, 2026, show-cause hearing for Walker's failure to appear at the case management conference.  A copy of the Notice to Show Cause is attached as **Exhibit G.**

**Saint Cloud's Second Abusive Bankruptcy Filing**

On August 12, 2025, mere minutes before the rescheduled public sale was to be held, Saint Cloud filed a second bankruptcy petition, styled *In re Saint Cloud, Inc.*, Case No. 4:25-bk-41443 (Bankr. N.D. Cal.) (the "Second Bankruptcy Case").  Like the First Bankruptcy Case, the Second Bankruptcy Case was riddled with substantive and procedural deficiencies and filed without counsel, though Saint Cloud eventually retained counsel (but only after the court threatened dismissal for failing to do so). TAG moved to dismiss the Second Bankruptcy Case on the grounds that it was filed in bad faith. [Second Bankruptcy Case, ECF No. 23]. Saint Cloud opposed TAG's motion, arguing in part that the Second Bankruptcy Case was filed to prevent TAG from recovering the Accounts from Park Street. [Second Bankruptcy Case, ECF No. 34, p. 2].  In the face of Saint Cloud's opposition, the bankruptcy court granted TAG's motion and dismissed the Second Bankruptcy Case, this time barring Saint Cloud from filing bankruptcy for 180 days. At the hearing on TAG's motion, the bankruptcy court observed:

> This is one of the clearest cases of abuse I have ever seen, period, end of story. The first case was completely ineffectual. The debtor was given a chance to fix the problems. Didn't do it. Let it ride. Filed a second case with all the same problems. The debtor is not showing up to 341 meetings. There is nothing more to say. Case dismissed.

*See* Transcript of the September 24, 2025, hearing on TAG's Motion to Dismiss (the "Transcript"), p. 9, ln. 20. A copy of the Transcript is attached as **Exhibit H**.

**The California Case**

With the 180-day bar in place after dismissal of the Second Bankruptcy Case, TAG was able to complete the foreclosure of its security interest on certain of Saint Clouds' assets, including

7

SGR/81888194.2

trademarks and other intellectual property by public sale conducted on October 29, 2025. TAG elected not to foreclose its security interest in the Accounts, instead relying on its collection rights under the Uniform Commercial Code. On November 21, 2025, Walker, in his individual capacity, filed the California Case against TAG and Park Street, as well as 50 John Does, through which he, among other things, challenges the foreclosure of TAG's security interest and seeks payment of the Disputed Funds from Park Street. Setting aside the procedural defects in the California Case— the notion of corporate separateness continues to elude Mr. Walker, who has no individual interest in the Accounts or resulting Disputed Funds—it might present a forum to resolve the issues also before this court, had Mr. Walker served TAG or Park Street. He has not. Tripp Declaration, ¶ 14. A March 27 Minute Order (the "Minute Order") issued in the California Case after a case-management conference at which Walker did not appear notes, "The Court notes there is no valid proof of service," and resets the case management conference to May 28, 2026. A copy of the Minute Order is attached as **Exhibit I**. To date, Walker is still representing himself in this case, and none of the defendants have been served. *Id.* Importantly, Saint Cloud, Inc. is not a party to this action.

**The Fulton County Case, Revived**

On December 22, 2025, TAG moved for default judgment in the Fulton County Case, but because the count for declaratory relief (which is the count that relates to payment of the Accounts, including the Disputed Funds) was added by amendment and there is no requirement under Georgia law to answer or respond to an amended complaint, that count cannot be the subject of default. *See Order on Plaintiff's Motion for Default Judgment* (the "Fulton County Default Order") entered in the Fulton County Case on February 13, 2026, a copy of which is attached as **Exhibit J** ("While the court agrees the Defendants [Walker and Saint Cloud] are in default, they are not in

default of the *Amended* Complaint."). Walker moved to open default in the Fulton County Case on February 2, 2026, prior to entry of the Fulton County Default Order. TAG opposed. The court has not ruled on that motion; however, the court denied a motion by Walker for an extension of time for Saint Cloud to retain counsel, noting "(1) Defendant Walker does not represent Defendant Saint Cloud, Inc., and therefore cannot move for relief on behalf of that defendant; (2) both defendants are in default; and (3) Defendant Saint Cloud has known of this case since at least August of 2025 and has failed to obtain counsel in that time; therefore the court is not inclined to grant even more time." *See Order on Defendants' Pending Motions*, entered in the Fulton County Case on February 10, 2026, a copy of which is attached as **Exhibit K**. To date, Saint Cloud is still in default in the Fulton County Case, but the court has yet to set a hearing for argument on the remainder of the counts in TAG's motion for default judgment.

**The Trademark Case**

On December 19, 2025, in response to Walker's continued infringement of the trademarks belonging to TAG as a result of foreclosure, TAG initiated the Trademark Case against Walker and Saint Cloud seeking declaratory relief related to TAG's ownership of the foreclosed trademarks and injunctive relief and damages for trademark infringement and unfair competition. A copy of the *Verified Complaint* filed in the Trademark Case is attached as **Exhibit L**.  In response, Walker and Saint Cloud filed counterclaims, including for conversion of funds and tortious interference related to the Accounts and Disputed Funds. A copy of *Defendants' Answer and Counterclaim* filed in the Trademark Case is attached as **Exhibit M**. The Trademark Case is in the early stages of litigation, with a hearing on dueling motions for preliminary injunctions set for April 30, 2026.

SGR/81888194.2

**Argument**

TAG is entitled to the Disputed Funds under the 2024 Security Agreement, and this Court is perfectly positioned to allow that by directing disbursement of the Disputed Funds to TAG. O.C.G.A. § 11-9-607[6] is dispositive on this issue and provides the following with respect to a secured party's collection and enforcement rights:

(a) If so agreed, and in any event after default, a secured party:

(1) May notify an account debtor or other person obligated on collateral to make payment or otherwise render performance to or for the benefit of the secured party;

(2) May take any proceeds to which the secured party is entitled under Code Section 11-9-315;

(3) May enforce the obligations of an account debtor or other person obligated on collateral and exercise the rights of the debtor with respect to the obligation of the account debtor or other person obligated on collateral to make payment or otherwise render performance to the debtor and with respect to any property that secures the obligations of the account debtor or other person obligated on the collateral

Moreover, TAG's "security interest…continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest…" and attaches to any identifiable proceeds of collateral. O.C.G.A. § 11-9-315(a)(1) and (2).

It is clear that under Georgia law, a secured party with a valid, perfected security interest may, upon default, directly enforce payment obligations associated with the collateral. O.C.G.A.

---

[6] Section 18(c) of the 2024 Security Agreement states: "Choice of Law. This Agreement and all transactions contemplated hereunder and/or evidenced hereby shall be governed by, construed under, and enforced in accordance with the internal laws of the State of Georgia." Accordingly, Georgia law governs the parties' rights and obligations, including enforcement of TAG's security interest, and O.C.G.A. § 11-9-607 applies as the State of Georgia's codification of the Uniform Commercial Code governing secured transactions.

SGR/81888194.2

§ 11-9-607(a)(3). *See ImagePoint, Inc. v. JPMorgan Chase Bank, Nat. Ass'n*, 27 F. Supp. 3d 494 (S.D.N.Y. 2014) (applying Georgia law and recognizing a secured creditor's right, upon default, to collect directly from an account debtor); *Mecco, Inc. v. Capital Hardware Supply, Inc.,* 486 F. Supp. 2d 537, 546 (D. Md. 2007) (applying Maryland's version of UCC § 9-607 and holding that, upon default, a secured creditor "had the right to step into the debtor's shoes and enforce the obligations of its account debtors"). That is precisely the case here: TAG is the secured party with a valid perfected security interest; Saint Cloud is the defaulting Seller under the 2024 Security Agreement; and Park Street is the Account Debtor on collateral owned by TAG. TAG continues to hold a first priority security interest in Saint Cloud's accounts receivables and it may exercise all rights afforded to it under the 2024 Security Agreement and O.C.G.A. § 11-9-607.

The Disputed Funds therefore constitute proceeds of collateral subject to TAG's security interest. Indeed, Georgia Courts applying the Uniform Commercial Code have repeatedly noted:

> It is of course basic law that the purpose of collateral is to secure the creditor and increase his chance of recovery in the case of default. The existence of a security interest in no way affects the existence of the debt. It merely provides the secured party with an immediate source of recovery in addition to the standard remedies of an unsecured creditor. The intent of the [C]ode was to broaden the options open to a creditor after default rather than to limit them under the old theory of election of remedies.

*Okefenokee Aircraft, Inc. v. PrimeSouth Bank*, 676 S.E. 2d 394 (Ga. Ct. App. 2009) (discussing OCGA § 11-9-609(a)(1) Rights After Default and holding that the law allows a secured creditor in possession of a debtor's collateral to employ a number of different remedial steps until the debt is satisfied).

Accordingly, immediate distribution of the Disputed Funds to TAG is warranted under O.C.G.A. § 11-9-607 and the 2024 Security Agreement, and the mere pendency of the Fulton County Case, which languishes in default, does not change that. Nor does the pendency of

11

California Case and Other California Case, which Walker appears to have abandoned. And while it might seem tempting to view the Trademark Suit as a clearinghouse for all of the disputes between TAG and Saint Cloud, to do so would only reward the shameless gamesmanship of Walker, who has operated in defiance of the rules of procedure, answered and appeared in only those cases when it suited him, and fortuitously tacked claims related to the Disputed Funds onto trademark litigation that will inevitably take much more time to resolve than a simple adjudication of a secured creditor's rights in collateral.  Saint Cloud has been served in this case and has not answered. TAG has offered evidence in the form of testimony supplied by the Tripp Declaration and the arguments contained in this Supplemental Brief to support its entitlement to the Disputed Funds. That should be enough.

<u>**Conclusion**</u>

For the forgoing reasons as well as the arguments and reasoning set forth in the Motion, TAG respectfully requests that this Court authorize and direct disbursement of the Disputed Funds to TAG.

Dated: April 23, 2026

Respectfully submitted,

*/s/ Michael F. Holbein*
Michael F. Holbein (FBN 1033402)
**SMITH, GAMBRELL & RUSSELL, LLP**
1105 W Peachtree St NE Ste 1000
Atlanta, GA 30309
Tel: (404) 815-3607
mholbein@sgrlaw.com; mmolinaro@sgrlaw.com

Ashley B. Carlisle (FBN 1049618)
**SMITH, GAMBRELL & RUSSELL, LLP**
50 N. Laura Street, Suite 2600
Jacksonville, Florida 32202
Tel: (904) 598-6100
acarlisle@sgrlaw.com; dhsmith@sgrlaw.com;
asalane@sgrlaw.com
***Attorneys for Defendant, The Acceleration Group, LLC***

SGR/81888194.2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 23, 2026, the foregoing document was filed with the Clerk of the Court using CM/ECF system, which will send a notice of electronic filing to all counsel of record in this case.

/s/ *Michael F. Holbein*
Michael F. Holbein (FBN 1033402)
**SMITH, GAMBRELL & RUSSELL, LLP**
1105 W Peachtree St NE Ste 1000
Atlanta, GA 30309
Tel: (404) 815-3607
mholbein@sgrlaw.com; mmolinaro@sgrlaw.com

SGR/81888194.2